The next case is Pursuit Holdings. Good morning, your honors. May it please the court, Michael Hayden Sanford, appellant. May I begin? Yes, please do. Thank you. I will ask for those three minutes of uninterrupted before taking questions, if I could, please. Thank you. Appellee's brief concedes, at page 29, that Judge Glenn never mentioned a sale order in his entire decision. Appellants have, therefore, won their appeal on the narrow question of fact, did Judge Glenn enter a sale order? No, he did not. Accordingly, did the district court err and dismiss the appeal, writing that the transaction was immune from review because it was a sale order? Yes, on both counts. And the district court was deceived by appellees, as I argued in my brief, and erred on these facts and applicable law because of appellees' misstatements in their brief, and the district did not collude together and deceive her. That in fact is what this appeal is about. The question now before the court is what should it do next, given the fact that Judge Cote was tricked? Should it go back to Judge Cote to review the underlying decision? Should it be remanded to Judge Glenn for specific proceedings? I believe that is the question before the court, and I'd like to attempt to answer that. To get there, the court needs to be aware of what has happened recently, which includes extraordinary events taking place in the past 30 days that affirm my allegations of improper conduct between the Knopf's and the trustee. I'm going to ask the court to please take judicial notice of these facts, of these recorded statements and certified transcripts, and explain what is going on, because it goes to the heart of the matter. As appellees have argued before this court in briefings, the court has inherent authority to consider new evidence, even though it's not available to present to the district court, and they cited to this court U.S. v. Seltzer from the Second Circuit, and also subcited Colbert v. Potter, stating specifically the district court did not see these documents, but nonetheless, it went to the heart of the contested issue, and quote-unquote, pretending it didn't exist would be inconsistent with the court's own equitable obligations. What I just want the court to be aware is that before the trial court, before Judge Glenn, which of course is docket 18, case number 18-12738, there are three docket entries going from 140 to 142 or 143, containing approximately 13 or 14 documents, half of them have been plaintiffs, so they cannot challenge those. The others are certified transcripts. These certified transcripts, I also need to make the court aware, have been recently reviewed by the U.S. Attorney's Office, and I was contacted by the FBI to go over what is going on. What has happened in the last month, on January 7th of 2021, Mr. Berry revealed to me in a recorded conversation, and there are certified transcripts now in the record before Judge Glenn, that he has been bribing or extorting under essentially what is the suit of the statute, the trustee to do its bidding. He explained specifically that the settlement agreement in place has been worded improperly. I'm not, Judge Chen, what are we supposed to do with this information now? Isn't this the kind of thing that needs to, you know, you've got to go back down to the District Court or the Bankruptcy Court, and the Bankruptcy Court, apparently, according to you, is looking at it. I mean, none of this is in the record. I'm not quite sure what you want us to do with it at this point. I mean, there seems to me that there's a legal question in front of us, so I'm not sure where you're going with all this. Sure, so I'd like to answer that question and go back to my pre-statement. You're entirely right, Your Honor. What I'd like to explain in my initial statement, there's only about a minute or so, is that this court has multiple bases to resolve issues. But if it were to keep this case going, because at its fundamental basis, the proof of claim is invalid, and the record you have proves it. So I want to show you how the court can dispose positively in an appellant's favor with what you have before you. But I also want to say, if the court were to say, hmm, I agree with you, Mr. Sanford, and Pursuit. We, though, think there should be a remand for the proceedings. The mechanism is set in place, because I've now submitted an application, the initial stage and notice, to get discovery from Mr. Berry about these events, which are certified. And thus, if it goes back, which we can discuss today, if it goes back in a remand for further proceedings to Judge Glenn, those other issues can be resolved. Can I just ask, this is Judge Livingston. You used about six minutes of your time. You had the initial three, and we're almost coming up to another three. And so can I just direct you to this thing that I think would be most helpful to me in District Court Erd in treating this as a 363B sale? Absolutely. And then I do, but I think the court may not be aware of the other thing I wanted to say. But yes. The District Court Erd, because Mr. Berry, as I read in the beginning, had explained in 25 words that I had not moved to stay the sale, which gave presumption to the District Court that there was a sale order, but there was no stay in effect. So thus, the District Court was deceived. It was afforded upon the court for her to believe those words and thus pre-assume that there must have been a sale order, or else there wouldn't have been a stay order. There was no stay order, which is proven by the conduct and the filings by appellees. Did I answer your question? Yes. You have one minute left, unless you want to use some of your rebuttal time. No, I'd like to just use this right now, because if the court would please look, or after this hearing, please look at a few pages in the brief and the JA's sites. If the court were to look at page 66, 76, and 77 of my brief, we can have justice finally. Page 66 is this court's jurisprudence and discusses Purgis. The court, of course, knows about judicial omissions. The court's two famous cases are Hub Floral and Purgis, and essentially, statements in a party's brief are binding. And if you go then, which is what 66 is about, if you go then to 76 and 77, I actually quote the statements. And that's why I've been fighting this for the last five or six years. I quote the statements that appellants moved on. The NAFs moved on before the trial court where I was present, before the appellate court and the Supreme Court. And the JA citation numbers for the court are 0466 and 0468 for the lower court, and 0440 and 0441 for the appellate court. If I just go to the appellate court, I would just like to read. It says, plaintiffs seek to enforce agreements in which defendant respondent Michael Stanford agreed to repay loans which plaintiffs made to him and his wholly owned company, Sanford Partners. That's it. Separately, they want to impose a constructive trust on pursuit, because that's where I spent my money. Then they said Sanford has repeatedly admitted he borrowed the money. Later on, they even make more clear what they're stating. In the next page, the decision appealed from. The August 2013 decision they lost, the summary decision where I argued, made no sense to them. Because, as they quote, the defendants raised tribal issues of fact, according to that court, whether the contract wasn't fact for reach as highlighted by the transfers from me involving pursuit holding. And they wrote. Mr. Stanford, you've reserved three minutes of rebuttal time. You've gone over your time in your main argument. Why don't we hear from the appellate, and then you can come back with three minutes of rebuttal. Yes, Your Honor. Your Honor, Michael Brownstein, counsel from target Princeton and Grogan, counsel for the chapter seven trustee, may it please the court. I believe Carl Sandburg, the poet, coined the saying, if the facts are against you, argue the law. If the law is against you, argue the fact. If the law and the facts are against you, pound the table and yell like hell. In this case, the appellants have gone a little farther, and accused the trustee by the documents they've filed, and what their argument is of colluding with the Knops, and of misleading the court, which is not the case at all. What the trustee did in this case is a practical matter, was to clinically evaluate the litigation position with pursuit and Stanford, and the Knops, and come to a decision that it was more appropriate, considering the matter, to settle it and obtain a distribution for unsecured creditors of the estate by extracting from the Knops a $200,000 payment and a waiver of their claim, except in limited circumstances of additional recovery. I think it's clear from the record that the trustee did not come to this conclusion until he reviewed the various documents and evaluated the merits of the party's positions, and of course, an expensive litigation. This court has plenary review powers over the decision of the Bankruptcy Court and the District Court, and may dismiss the appeal either under the standards of 9019 by looking at Judge Glenn's decision, or by viewing the decision of Judge Coates. The settlement, as a matter of fact, was done on notice to all creditors and parties of interest, just like a 363 sale will be. The motion requested relief under 363B, not F, but B, and the record before the Bankruptcy Court will show that. A section 363 sale does not have to be done subject to higher and better, which would be under F. Under B, we sold the property by foot claim deed with all its problems. The purpose of this settlement was to get money for unsecured creditors and enable the trustee to extract itself from the years of litigation between these two debtors, between the debtor and the affiliate, and we were unfortunately unable to do that because we've been stuck in this quagmire of quicksand for years, as evidenced by what Mr. Sanford argued. Why doesn't it make a difference here on whether we can treat this as a 363B sale that Judge Glenn didn't cite that in his analysis? I don't quite know why he didn't. We asked him to. But even if you don't, you don't even have to reach 363, because under Rule 9019, he made it clear this settlement was in the bounds of reasonableness, and I believe that the standard that he determined under the Gucci cases satisfies the issue. If you want to go to good faith, you certainly have that finding by what Judge Glenn said in the sense that the settlement was done at arm's length in appropriate negotiations, and I think I can quote you say, Judge Glenn said, it says, legions about the wisdom of the trustee and her appropriate exercise of business judgment in negotiating the settlement. This is Judge Chen. This is Judge Chen. I was just going to ask, um, Judge Glenn didn't cite 363, but in essence, were the requirements of 363 met here? Yes, that's exactly correct. And just, I mean, can you run through that for us? Yeah, sure. The Second Circuit in the Gucci case made it clear that in order to qualify as a good faith purchaser, you must show, he must have integrity of his conduct during course of sale. Whether it was a lack of such integrity, a good faith finding may or may not be made. A purchaser's good faith is wrought by fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders. I think it is difficult, and we submit that it is logically impossible to not come to the conclusion on the facts that Judge Glenn and Judge Post's decision are consistent, and that both the settlement, which was negotiated at arm's length and in good faith, as cited by Judge Glenn, is consistent with a good faith finding by Judge Post, and that the Knops are good faith purchasers. That would make the sale moot. Isn't part of good faith not having notice of potential adverse claims? And here it seems like, the Knops would have intimate knowledge of any such claims, and so isn't it enough that it's just arm's length? Yes, they clearly knew that, but that was the purpose of the quick claim deed, and they were taking it subject to all of its problems, which is why we didn't sell it free and clear, because we thought they had a valid claim and a valid secure claim, and I think the judge agreed with us, but I guess my point is that whether or not you want to find that the sale was moot or done in good faith, and they were good faith purchasers, the statutory standard is met for a 1919 settlement, which this court has the full power to review. And effectively speaking, the claims that are generally talked about, or there are the issues there, or the ones about environmental claims, or things of that nature, but we did not want to get into the issues of having to pay the real estate taxes or anything like that. That was an issue that was going to have to be dealt with by the Knops, but I believe that Judge Glenn's finding that there was done at arm's length and in good faith negotiations, by definition, causes it to be a good faith purchaser. I appreciate your honest comment, but that's the only way I can explain it. Your time has expired. We'll hear from your colleague, Mr. Berry. Thank you, Your Honor. This court is, of course, and this Eric Berry, I'm sorry for him, Michael Norman Knops, this court, of course, is acting as a second tier appellate court in this bankruptcy case. Under the precedence, it's clear that the court's review is plenary and extends not only to the intermediate district court of affirmance, but also the court decision. So, in essence, if there were error at the district court level, and there is none, if there were error at the district court level, it would be harmless error because the underlying bankruptcy court decision is clearly correct. I think underlying the appellant's standards under Rule 90-19 and Rule 66, I'm sorry, 363 both have to be met. There is no such rule. Under Rule 90-19, the court has to consider various factors in determining whether a settlement is in the best interest of the estate. The principal factors here are whether the settlement is the product of arm's-length bargaining. Clearly, there's arm's-length bargaining here. The trustee managed to extract another $200,000 from my client, even though we had a judicial lien that was a secured claim that was a judicial lien that was twice the amount of the property at We could have moved again to dismiss the bankruptcy when there was no appraisal showing that the property was in excess in value of our $10 million judgment. Nevertheless, we paid $200,000, which shows both our good faith and the arm's-length nature of the negotiations. The other relevant factor here is the likelihood of any litigation by the trustee having success. Here, the Knopf's judgment against Mr. Sanford, the Knopf's judgment against his company, the owner of the asset at issue, was based on a 2014 ruling by the first department that had never been challenged. To overturn that 2014 appellate ruling, somebody would have had to obtain leave to appeal to the New York Court of Appeals, which would have been, first of all, untimely, and secondly, frankly and practically impossible, because there's no interesting issue here. It's just simply a matter of contract law. The Court of Appeals does not review decisions that would bring to it only routine matters of contract law. There was no hope of the judgment in my client's favor ever being overturned. The trustee would have been embarking on a fool's errand to undertake that. That factor, together with the fact that we paid $200,000 for a property that we had leaned twice over, shows the 90-19 standards were met. In these circumstances, Code Section 363M is just an additional reason for affirming. Under 363M, there's some boilerplate in the listing of factors, but the two real factors are whether everybody who was interested received notice of the sale. Of course, that happened here. This is an experienced trustee, and everybody was notified. There's been no contention that everyone wasn't notified, and whether the buyer was acting in good faith. This, of course, goes back to the fact that we paid $200,000 despite the fact that we had a $10 million judicial lien against the property, which was unassailable. Both the 90-19B and 363M standards are met here, but you don't need to get to the 363M standards because this court's plenary affirmed because Judge Glynn made all the requisite findings. He wrote a lengthy decision. He explored the defendant's arguments. I'm sorry, not the defendant's, but the appellant's arguments, and rejected them. He didn't just reject them out of hand. Let me just clarify, Judge Chin. In other words, if we held that this was a 363 sale, then it is statutorily moot. Alternatively, we can avoid the 363 question and simply hold that on the merits we confirm under Rule 90-19. Is that what you're saying? Absolutely. That is absolutely the case. This is what's known as a hybrid motion. It's both an approval of the sale and approval of the settlement and approval of the disposition of the property. In those circumstances, the motion is treated as a settlement or a motion is treated as a request to approve the settlement. Under Rule 90-19B, Judge Glynn properly approved the settlement. The fact that the settlement also included as one of its provisions a sale doesn't mean that you can skip over the 90-19B analysis, ignore that analysis, treat the transaction only as a sale of real estate, and then look through the order and try to find some sort of linguistic glitch. There's no doubt that the buyer was acting in good faith. There's no doubt that everyone had noticed. Even if there is a recitation missing in Judge Glynn's order, first of all, the linguistic omission wouldn't change the fact that this is in substance a 363M sale. Even if this is a 363M sale, that doesn't increase the trustee's burden in obtaining approval. You're still looking at this under Rule 90-19B and all the requisite elements for approval under 90-19B here are met and are met in spades. Thank you, Mr. Berry. Your time is expired. Thank you for your argument. Mr. Sanford will hear three minutes of rebuttal. Thank you, Your Honor. Judge Park raised a very good point, good faith. Delphi, as we explained, could not be the same Delphi. It is a different entity. It is not a judgment creditor. As explained, they set Delphi up, Mr. Berry did, a year and a half ago. The original Delphi was dissolved 20 years ago. That is in the record. They did it just to confuse people. And again, Mr. Berry filed two weeks ago, as I wanted to show to the court also in supplemental filing, where it admits it's a completely different entity. So as Judge Park said, no, there was no good faith. The buyer is a fake. Mr. Berry filed an affirmation, essentially, this is the judgment creditor, but it could not be. That's in the record. The next thing is, as I wrote on page 12, a court necessarily abuses its discretion to base this ruling on an erroneous view of the law or the evidence. Judge Cote never heard from our side. It's a simple due process issue. They denied us due process by telling Judge Cote it was a 363 sale. They tricked her. Then they came back and said, okay, maybe it's not a 363 sale, but nonetheless, under other grounds, you should lose. But that was after she had dismissed. That's why it should definitely go back to Judge Cote, because she got to hear from our side. So on the second element, their admission it wasn't a sale is fatal. And they do that. They say Judge Glenn never said this, but they argued to Judge Cote, he said it was a sale. That's a misrepresentation of important fact. That's another reason. The third reason, which is being missed here, is that the actual monies were never given to the settlement was signed off on before the proof of claim began. That's the whole point for going to bankruptcy court. Mr. Berry misled the court just now saying we'd have to go to the Court of Appeals. Wrong. The trustee said a 50-15 could have been filed, and it still could be filed. That's a misrepresentation of fact. I personally filed a 50-15 against a different judgment against the same asset, an $8 million one, and that was vacated. We've done it before. What's key to say is what I said before. If you go to the record, the J.A. cites, there was never a motion for summary judgment against pursuit. It was only against me individually, which means we never had a right or the ability to fight it, which is exactly what one case, Brown v. Navarro, the Fifth Circuit, 1987, I would ask the court to please look at, 862F2B335. In it, it cites two U.S. Supreme Court cases, Heiser, which I did, and U.S. v. Throckmorton, and they explain that a fraud upon the court or essentially a judgment to be invalid in bankruptcy court to be thrown out would mean that the other side didn't have a full and fair opportunity to contest it, not simply that it's wrong. In this case, they only allege contract claims against me, and I then opposed, and I have counterclaims. They could not get a judgment, so then they simply flip-flopped. They did what the late great Justice Ruth Bader Ginsburg said is impermissible in Maine v. New Hampshire. They judicially stopped. They changed their position, flip-flopped, and avoided judicial omissions and simply pretended they moved against pursuit. This is simply wrong. There can't be a judgment against pursuit based upon a Supreme Court decision that was denied. Then it got reversed on the law, not the facts, by the appellate division, but the appellate division also only heard, and the papers are in this record, that the actual claims are against Sanford Partners, the company, and Michael Sanford. Thank you, Mr. Sanford. You're over your three minutes. We'll take the matter under advisement, and thank you all, all three, for your arguments today. Thank you, Your Honors. That's the last case on the calendar this morning. Thank you, Your Honor. Thank you. That's the last case on the calendar this morning, so I will ask the clerk to adjourn court. Court stands adjourned.